Cynthia M. Fraser, OSB #872243
E-Mail: cynthia.fraser@foster.com
Paul H. Trinchero, OSB #014397
E-Mail: paul.trinchero@foster.com
FOSTER GARVEY PC
121 SW Morrison Street, 11th Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KIASANTANA LLC, an Oregon limited liability company; and KOERNER CAMERA SYSTEMS, INC., an Oregon corporation, | Case No.  3:20-cv-01419 |
| Plaintiffs, | **COMPLAINT** |
| v. | **Inverse Condemnation Action (42 U.S.C. §1982)** |
| TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON, a municipal corporation of the State of Oregon; and the CITY OF PORTLAND, a municipal corporation of the State of Oregon, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Kiasantana LLC and Koerner Camera Systems, Inc. hereby alleges against

defendants Tri-County Metropolitan Transportation District of Oregon and the City of Portland

as follows:

COMPLAINT
Page 1 of 29

## Preamble

1.

Plaintiffs Kiasantana LLC ("Kiasantana") and Koerner Camera Systems, Inc. ("Koerner") are the owner and leaseholder, respectively, of the property located at 2828 SE 14th Avenue, Portland, Oregon 97202. Plaintiffs bring this action to recover just compensation for the appropriation of their real property rights for public use by the City of Portland (the "City") and the Tri-County Metropolitan District of Oregon ("TriMet") as part their project to construct a pedestrian and bicycle bridge known as the Gideon Overcrossing (the "Project") without paying just compensation as required by the Takings Clause in the Fifth Amendment of the United States Constitution and Article I, Section 18 of the Oregon Constitution. Plaintiffs bring these federal and state law claims to recover the just compensation for the taking of real property interest and damages for defendants numerous trespasses onto plaintiffs' property during the construction of the Project.

## Parties

2.

Plaintiff Kiasantana is an Oregon limited liability company that holds title to the property located at 2828 SE 14th Avenue, Portland, Oregon 97202, as legally described in Exhibit A, attached hereto and by this reference made a part hereof (the "Property").

3.

Plaintiff Koerner is an Oregon corporation that leases the Property from Kiasantana.

///

///

COMPLAINT
Page 2 of 29

4.

Defendant TriMet is a municipal corporation organized and existing under the laws of the State of Oregon.

5.

Defendant City of Portland is a municipal corporation organized and existing under the laws of the State of Oregon and situated in Multnomah County, Oregon.

**City and TriMet Official**

6.

At all times material, Lance Erz was and is the Director of Real Estate and Transit Oriented Development and Senior Deputy General Counsel for TriMet. On information and belief, Lance Erz has final policy making authority to decide whether or not TriMet will seek condemnation of real property interests for TriMet's public purposes, and whether or not TriMet will provide just compensation for the temporary or permanent taking of real property interests. Moreover, Lance Erz has authority over the means and manner the Project's construction.

7.

At all times material, Shelley Devine was and is General Counsel for TriMet. On information and belief, Shelley Devine has final policy making authority to decide whether or not TriMet will seek condemnation of real property interests for TriMet's public purposes, and whether or not TriMet will provide just compensation for the temporary or permanent taking of real property interests. Moreover, Shelly Devine had the power and authority to ratify Lance Erz's decisions with respect to temporary and permanent takings of real property interests, and so ratified his actions here.

COMPLAINT
Page 3 of 29

8.

At all times material, Ken McGair was and is a Senior Deputy City Attorney for the City of Portland responsible for the Portland Bureau of Transportation. On information and belief, Ken McGair has final policy making authority to decide whether or not the City will seek condemnation of real property interests for the City's transportation system, and whether or not the City will provide just compensation for the temporary or permanent taking of real property interests.

9.

At all times material, Tracy Reeve was and is the City Attorney for the City of Portland responsible for the Portland Bureau of Transportation. On information and belief, Tracy Reeve has final policy making authority to decide whether or not the City will seek condemnation of real property interests for the City's public purposes, and whether or not the City will provide just compensation for the temporary or permanent taking of real property interests. Moreover, Tracy Reece had the power and authority to ratify Ken McGair's decisions with respect to temporary and permanent takings of real property interests, and so ratified his actions here.

**Jurisdiction and Venue**

10.

This is a civil action brought pursuant to 42 U.S.C. §1983 for violation of the Fifth Amendment the United States Constitutions made applicable to defendants through the Fourteenth Amendment. There is federal question jurisdiction for this claim pursuant to 28 U.S. §1331. Plaintiffs also assert a state law claims for violation of Article I, §18 of the Oregon Constitution, trespass, nuisance, violation of the Pedestrian Mall Law of 1961, ORS 376.705 et.

COMPLAINT
Page 4 of 29

seq., and declaratory relief under Oregon's Uniform Declaratory Judgment Act, ORS 28.010, et seq. There is supplemental jurisdiction over these state law claims under 28 U.S.C. §1367.

11.

Pursuant to 28 U.S.C. §1391(a), venue is proper in this district because the Property and a substantial portion of the events or omissions giving rise to this action took place in Oregon.

**The Project**

12.

On or about March 30, 2009, the City and TriMet entered into an intergovernmental agreement (the "Agreement") for the Portland-Milwaukie Light Rail. Under the Agreement TriMet has the authority to manage all phases of the construction, design and acquisitions of property for the Portland-Milwaukie Light Rail. The Agreement provides that the City will allow TriMet to use city right-of-way and property for purposes of the Portland-Milwaukie Light Rail.

13.

As part of the Agreement, the City and TriMet planned for the construction of the Gideon Overcrossing. The Gideon Overcrossing is an elevated bridge for pedestrians and cyclists near the light rail station at SE Clinton Street and SE 12th Avenue that would go over the railroad tracks to SE 14th Avenue (the "Project"). The SE 14th Avenue portion of the bridge structure including stairs and an elevator are being constructed in the street directly in front of the Property on SE 14th Avenue.

14.

Pursuant to the IGA, the City will take responsibility for the operation and maintenance of the Project upon its completion and TriMet will relinquish ownership.

FG:10912806.6

## The Property

15.

The Property is part of a (Year) plat that reserved SE 14th Avenue as a dedicated street. A copy of the plat is attached hereto as Exhibit B and is hereby incorporated by reference.

16.

The Property is approximately 11,100 square feet and is improved with an 8,513 square foot industrial building with a footprint of approximately 7,313 square feet. Prior to the construction of the Project, the Property had four useable parking spaces, including one Americans with Disabilities Act (ADA) parking space and an ADA ramp for access to the building. The Property is zoned EG-1, which allows light industrial uses. Kiasantana purchased the Property in December 2015 and spent approximately $1 million to renovate the building for use as a light industrial building (the "Building"). A key feature of the Building is the updated loading dock located at the southwest end of the Property abutting the SE 14th and the railroad right of way (the "Loading Dock").

17.

The Property's sole access is limited to its street frontage immediately abutting SE 14th Avenue. The street dead–ends at the rail road right of way and the Property it is bounded by buildings to the north and east and the railroad right of way to the south. Prior to construction of the Project, the entire street frontage abutting the Property could be used for ingress and egress onto SE 14th Avenue. Prior to construction of the Project, all vehicles, including commercial vehicles from the size of delivery trucks to large semi-trucks had unimpaired street access to the frontage of the Property and the Building and/or Loading Dock.

18.

Kiasantana leases the Property, inclusive of the Building and Loading Dock, to Koerner Camera. Koerner Camera operates a light-industrial camera rental business for local and national television and movie productions. Like most light industrial businesses, Koerner and its customers rely on full access to the platted street and unfettered access the frontage of its Property and to utilize the Loading Dock.

19.

As a result of the Project, the platted street is no longer reserved for vehicular traffic and access to the Property frontage is blocked by a structure placed directly in the street frontage that abuts the Property. The structure is reserved for pedestrians and bicyclists.

**The City's Failure to Follow the Pedestrian Malls Law of 1961**

20.

Pursuant to Pedestrian Malls Law of 1961, ORS 376.705 et. seq., the City has the power to establish a pedestrian mall prohibiting in whole or in part vehicular traffic on a dedicated City street. A "pedestrian mall" is defined as "one or more city streets, or portions thereof, on which vehicular traffic is or is to be restricted in whole or in part and which is or is to be used exclusively or primarily for pedestrian travel." ORS 376.705(3).

21.

The Project restricts vehicular traffic in the portion of SE 14th Avenue abutting the Property and reserves it primarily for pedestrian and bicyclist travel.

22.

Prior to restricting the vehicular use of SE 14th Avenue to primarily pedestrian use, the

City was required to follow the procedure set forth in the Pedestrian Mall Law. The procedures requires to the City to first establish by resolution the public interest in closing off SE 14th Avenue to vehicular traffic in the establishment of the pedestrian mall, and provide notice to property owners who have an equitable interest in the planned abutting portion of the pedestrian mall, which will be unduly inconvenienced by the prohibition of vehicular traffic. The law entitles affected property owners to object and to have a hearing on the objection. The law also provides a process for the payment of claims to affected property owners.

23.

Despite plaintiffs' demand, the City did not provide notice to defendant of the Project and refused to follow the procedures set forth in the Pedestrian Mall Law.

**Pre-Construction Events**

24.

In or around 2018, plaintiffs were advised and provided documentation that the City and TriMet would be constructing the Project in front the Property. On or about November 30, 2018, plaintiffs received ninety percent (90%) construction plans for the Project, which showed improvements including structures, walkways and elevators, the majority of which are to be placed in the middle of SE 14th Avenue directly abutting the Property. This portion of SE 14th Avenue will be dedicated for pedestrian and bicycle traffic, prohibiting the safe movement of vehicular traffic and blocking the ability for reasonable ingress or egress to or from Property.

25.

Between the summer of 2018 and the spring of 2019, TriMet had several meetings and communications with plaintiffs regarding the Project. As part of its analysis of the impacts of the

COMPLAINT
Page 8 of 29

Project on the Property, TriMet caused certain auto-turn analyses to be conducted showing the adverse impact of the Project on access to the Property and potential ways to purportedly cure the adverse impact. The auto-turn analyses shared with plaintiffs shows that the Loading Dock would not be useable after construction of the Project. Plaintiffs were advised by TriMet that the Loading Dock should be extended approximately 30 feet in order for commercial vehicles to be able to access it.

26.

On or about March 15, 2019, Kiasantana received a letter from TriMet providing notice of TriMet's desire to appraise the property to obtain temporary easements over a portion of the Property for purposes of constructing the Project.

27.

On or about May 24, 2019, TriMet's counsel sent an email to plaintiffs' counsel confirming that TriMet had not passed a resolution of necessity pursuant to ORS 35.352 and that TriMet would not seek to condemn the temporary easement if Kiasantana did not accept TriMet's anticipated offer to purchase the temporary easement. True to its word, TriMet never passed a resolution authorizing condemnation of the temporary easement as required to by the Oregon Condemnation Procedure Act ("CPA"), ORS Chapter 35 nor did it seek to condemn a temporary easement prior to beginning work on the Project.

28.

On or about June 7, 2019, TriMet sent an offer to Kiasantana to purchase a temporary construction easement on the Property. The offer was not accepted. TriMet did not obtain permission or an agreement to enter onto the Property.

COMPLAINT
Page 9 of 29

## Construction Events

29.

On or about May 18, 2019, as part of the construction of the Project, the City's

contractors entered onto the Property with heavy excavation equipment without plaintiffs'

consent while doing utility work in SE 14th Avenue. Plaintiffs sent notice of the trespass to both

the City and Tri-Met with a demand that such trespasses cease.

 

30.

On or about June 7, 2019, the same day TriMet sent its offer to acquire temporary

easements on portions of the Property, TriMet began construction of the Project restricting

vehicular access to the street frontage and causing access to the Property to be restricted to such

an extent that Koerner's customers were required to use a hand cart to shuttle expensive camera

equipment onto the Property.

COMPLAINT
Page 10 of 29




31.

On or about June 11, 2019, TriMet caused a fencing to be erected on the Property without plaintiffs' consent for construction occurring in the right of way. The fencing effectively restricted access to the Property by customers and employees. TriMet placed construction equipment and vehicles in the street eliminating vehicular traffic to the property.




32.

On or about July 12, 2019 and July 15, 2019, Project construction blocked vehicular street access along the frontage of the Property and severely restricted access to the Property.

COMPLAINT
Page 11 of 29

33.

On or about August 8. 2019, Project construction blocked vehicular street access along the frontage of the Property and severely restricted access to the Property.

34.

On or about August 17, 2019, TriMet caused a fence to be erected around the Project. The fence left only a narrow opening along the frontage of the street blocking vehicular access the Property. During construction, access to the Property was (and is) controlled by a flagger who was not always present on site.

35.

After the fence was erected, Koerner Camera's employees and customers access to the Property was unreasonably restricted and it became nearly impossible for large commercial trucks to utilize the Loading Dock. Access restrictions included no vehicular access along the frontage of the Property and at various times, the complete inability for customers to access the Property in a vehicle, long delays in obtaining access to the Property, customers and employees being required to park on the street, and/or customers and employees being required to shuttle expensive camera equipment and other deliveries to the Building by hand.

 

COMPLAINT
Page 12 of 29

 

36.

At various times from the beginning construction of Project, TriMet and/or the City's personnel and/or contractors have entered onto and continue to enter onto the Property without plaintiffs' consent as part of their work on the Project. The areas of the TriMet and/or the City's trespasses roughly correspond to the area the temporary easements that TriMet offered to acquire in May 2019.

 

COMPLAINT
Page 13 of 29



37.

At all times from initiation of the Project, the frontage of the Property has been restricted

to vehicular traffic. At various times from the beginning construction of Project, TriMet and/or

the City's personnel and/or contractors have unreasonably restricted access to the Property

interfering with plaintiffs' use and enjoyment of the Property. For example, the following photos

depict construction activities in August 2019.

 

COMPLAINT
Page 14 of 29

 

**Project Damages to the Use of the Property**

38.

Without limitation, the Project damages and impairs the utility of the Property including as follows:

a.      Plaintiffs, their employees, vendors and customers no longer have reasonable vehicular access to the street frontage abutting the Property, including without limitation to the Building, the parking stalls, and Loading Dock;

b.      The current Loading Dock placement is no longer accessible for a commercial size truck rendering it useless for light industrial use;

c.      A commercial size delivery truck entering onto the Property, if it can safely access the Property at all, will block all parking stalls, maneuvering area, and driveway;

d.      The number of parking stalls has been reduced or completely eliminated as a part of the Project;

///

COMPLAINT
Page 15 of 29

e.      Emergency fire vehicles will no longer be able to access the Property within 150 feet of the Building's far corner as required by the applicable building code; and

f.      The utility of the Property for an industrial use has been greatly diminished or eliminated.

39.

The highest and best use of the Property is no longer as the property is currently improved or as an industrial use.

40.

As a result of the Project, the value of the Property has been diminished by approximately $500,000.

**City and TriMet Policy Decisions with Respect to Condemnation and the Pedestrian Mall Law of 1961**

41.

In numerous meetings and communications with TriMet officials prior to construction of the Project, plaintiffs advised TriMet that the Project taking of  the street frontage and access to the Property and to the Building and Loading Dock the taking and would damage the highest and best use of the property. TriMet acknowledged the taking of the Project created damages to the Property and to the access to the Building and Loading Dock. TriMet acknowledged that the Loading Dock would need to be extended by 30 feet in order to be at accessible to a commercial vehicle. However, TriMet refused to offer just compensation to compensate plaintiffs for the damages to the Property as a result of the Project.

///

COMPLAINT
Page 16 of 29

42.

TriMet also knew that it required a temporary easement over plaintiffs' Property to construct the Project. TriMet hired an appraiser to value a temporary construction easement on plaintiffs' property for purposes of the Project. TriMet instructed the appraiser to not consider the restriction on the vehicular or pedestrian access as a result of the temporary construction easement or as part of the Project in determining just compensation. TriMet made an offer to purchase the temporary construction easement, advising plaintiffs that the offer was just compensation for any and all damages to the property. Yet, this offer was made without a resolution of public necessity or without any references to it being made under TriMet's eminent domain authority or the Oregon Condemnation Procedures Act ("CPA") Chapter 35.

43.

In numerous meetings with TriMet officials prior to construction of the Project, plaintiffs demanded that TriMet follow the CPA to condemn plaintiffs' real property interests to access SE 14th Avenue and for the temporary easements that TriMet offered to acquire.

44.

On or about May 24, 2019, Lance Erz, on behalf of TriMet, sent an email to plaintiffs' counsel confirming that TriMet had not passed a resolution of public necessity pursuant to ORS 35.352 for this Project and announcing that TriMet would not acquire a temporary easement for construction of the Project by condemnation if the offer of just compensation for the temporary easement was not accepted by plaintiffs.

45.

On or about September 4, 2019, Lance Erz, on behalf of TriMet, sent an email to

FG:10912806.6

plaintiffs' counsel confirming that TriMet would not compensate plaintiffs for the Project's impacts on the Property.

46.

On or about July 26, 2019, plaintiffs demanded the City follow the Pedestrian Mall Law of 1961, ORS 306.705 to ORS 306.825, prior to closing SE 14th Avenue to vehicular traffic as part of the Project. On or about August 30, 2019, Ken McGair, on behalf of the City, announced the City's decision not to follow the procedure set forth in the Pedestrian Mall Law of 1961.

**Oregon Tort Claim Notice**

47.

On or about November 7, 2019, plaintiffs sent the City and TriMet a letter entitled Notice Under Oregon Tort Claims Act – ORS 30.275 providing notice of plaintiffs' past and continuing claims for trespass, nuisance, and violation of the Pedestrian Mall Act as provided for in ORS 30.275 (the "Notice"). Although not required by ORS 30.275, the letter also provided notice of defendants' violations of the CPA, the Takings Clauses in the United States and Oregon Constitutions. A copy of the Notice is attached hereto as Exhibit C and is hereby incorporated by reference.

48.

Prior to the November 7, 2019 notice, plaintiffs put defendants on actual notice of the claims for trespass, nuisance, and violations of Oregon law through numerous meetings, letters, and emails.

///

///

COMPLAINT<br>Page 18 of 29

49.

As of the date of this filing, neither the City nor TriMet has responded to the November 7, 2019 letter.

**First Claim for Relief**

**(Inverse Condemnation – 42 U.S.C. §1983)**

50.

Plaintiffs re-allege paragraphs 1 through 48.

51.

TriMet has the power of eminent domain to take private property for a public use and purpose pursuant to Oregon statute. ORS 267.200. In exercising the power of eminent domain, TriMet is required to comply with the Taking Clause in the Fifth Amendment of the United States Constitution made applicable to it by the Fourteenth Amendment.

52.

The City has the power of eminent domain to take private property for a public use and purpose pursuant to Oregon statute and must comply with the CPA when taking private property for public use. In exercising the power of eminent domain, the City is required to comply with the Taking Clause in the Fifth Amendment of the United States Constitution made applicable to it by the Fourteenth Amendment.

53.

Defendants violated plaintiffs' Fifth Amendment right to receive just compensation for the taking for a public use and purpose of each plaintiff's respective real property interests in and to the Property in connection with the construction and eventual operation of the Project

COMPLAINT
Page 19 of 29

described as follows:

a.      The physical occupation and use of the Property by each defendant and/or their contractors in the manner of a temporary easement for the construction of the Project;

b.      The temporary closure and unreasonable restriction of vehicular access SE 14th Avenue and the Property frontage, including the Building and Loading Dock, during the construction of the Project;

c.      The permanent unreasonable restriction of vehicular traffic to the street and access to the frontage of the Property, including the Building and Loading Dock, as a result of the Project; and

d.      The taking of plaintiffs' abutters rights to SE 14th Avenue by restricting vehicular use of that platted street as a result of the Project.

54.

The violation of plaintiffs' constitutional right to just compensation for the taking of real property interests for a public use or purpose were caused by TriMet in the following manner:

a.      In having a policy and /or custom and practice of allowing a temporary taking of private property rights for public use without paying just compensation where the project is to be constructed in an abutting public right of way;

b.      In having a policy and/or custom and practice of a permanent taking of reasonable access for a public purpose without paying just compensation where the project is to be constructed in an abutting public right of way;

c.      In having a policy and/or custom and practice of a taking a property owner's right to use a platted street for vehicular traffic for a public purpose without paying just compensation

COMPLAINT
Page 20 of 29

where the project is to be constructed in the public right of way;

    d.    In having a policy and/or custom and practice of temporary taking of property rights for a public use without paying just compensation as part of project despite knowledge of repeated instances when public employees and contractors have entered onto and used private property without property owner's consent for purposes of constructing a public works project;

    e.    In having a policy and/or custom of finding that no taking of property rights have occurred where the public works project is constructed in a public right of way regardless of the impact on abutting property owners;

    f.    In failing to train and instruct its employees and agents in how to construct a public works project without using and entering private property without necessary consent from the owner or leaseholder;

    g.    In failing to train and instruct its employees and agents in how to design a public works project without depriving reasonable access to the abutting private property;

    h.    In having a policy and/or custom of ratifying and approving temporary and permanent taking of property rights for a public purpose without paying just compensation as described in subparagraphs a through g above; and

    i.    By the respective actions of policy makers Lance Erz, Shelley Devine, Ken McGair and Tracey Reeves in approving and/or ratifying temporary and permanent taking of property rights for a public purpose without paying just compensation as described in subparagraphs a through g above.

55.

Defendants' actions resulting in the violation of plaintiffs' Fifth Amendment rights were

COMPLAINT<br>Page 21 of 29

taken under color of state law, namely, the state and local laws granting the power of eminent domain and such laws that allow for the construction and operation of the Project.

56.

Defendants' actions resulting in the violation of plaintiffs Fifth Amendment rights were taken under color of state law, namely, the state and local laws granting the power of eminent domain and such laws that allow for the construction and operation of the Project.

57.

As a direct result of defendants violation of plaintiffs' constitutional right to just compensation, plaintiffs are entitled to recover an amount to be proven at trial, but no less than $550,000.

58.

Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42 U.S.C. §1988(b).

**Second Claim for Relief**

**(Inverse Condemnation – Or. Const. Art. I §18)**

59.

Plaintiffs re-allege paragraphs 1 through 48.

60.

Defendants violated plaintiffs' right under Article I, Section 18 of the Oregon State Constitution to receive just compensation for the taking for a public use and purpose of each plaintiff's respective real property interests in and to the Property in connection with the construction and eventual operation of the Project described as follows:

COMPLAINT
Page 22 of 29

FG:10912806.6

a.    The physical occupation and use of the Property by each defendant and/or their contractors in the manner of a temporary easement for the construction of the Project;

b.    The temporary closure and unreasonable restriction of access to the Property, including the Building and Loading Dock, during the construction of the Project;

c.    The permanent unreasonable restriction of access to the Property, including the Building and Loading Dock, as a result of the Project; and

d.    The taking of plaintiffs' abutters rights to SE 14th Avenue by restricting vehicular use of that platted street as a result of the Project.

61.

As a direct result of defendants violation of plaintiffs' constitutional right to just compensation, plaintiffs are entitled to recover an amount to be proven at trial, but no less than $550,000.

62.

Plaintiffs are entitled to their necessary and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to ORS 20.085.

### Third Claim for Relief

### By Kiasantana Against the City Only

### (Just Compensation for Closure of Abutters' Rights to a Dedicated Street)

63.

Plaintiffs re-allege paragraphs 1 through 48.

64.

Kiasantana is the record title holder to the Property abutting SE 14th Avenue.

COMPLAINT
Page 23 of 29

65.

SE 14th Avenue is a street dedicated for vehicular use in a duly recorded plat.

66.

Kiasantana is entitled to recover just compensation in an amount to be proven at trial, but no less than $550,000, for the closure of the portion of SE 14th Avenue abutting the Property.

**Fourth Claim for Relief**

**(Count One – Trespass)**

67.

Plaintiffs re-allege paragraphs 1 through 48.

68.

Throughout the construction of the Project, which continues as of the date of this filing, TriMet's employees and agents on numerous occasion and with great regularity have entered and continue to enter onto plaintiffs' Property without their consent.

69.

On a number of occasions during the construction of the Project, the City's employees and agents have entered onto plaintiffs' Property without their consent.

70.

Each defendant is joint and severally liable to plaintiffs for the other's trespasses because:

a.      Each defendant acted in concert with the other and pursuant to a common design, namely the construction of the Project;

b.      Each defendant knew the other's conduct constituted a trespass on plaintiffs' Property and provided substantial assistance and encouragement to other in such conduct; and/or

COMPLAINT
Page 24 of 29

c.    Each defendant gave substantial assistance to the other in accomplishing the trespasses and each defendant's conduct, separately considered, constituted a breach of plaintiffs' property rights.

71.

As a direct result of defendants trespasses entitle plaintiffs damages in the amount to be determined at trial, but no less than $50,000.

**(Count Two – Nuisance)**

72.

Plaintiffs re-allege paragraphs 1 through 48 and 63 through 66.

73.

Throughout the construction of the Project, which continues as of the date of this filing, TriMet's employees, agents and contractors on numerous occasion and with great regularity have entered and continue to enter onto plaintiffs' Property without their consent. In addition, defendants' actions have caused access to plaintiffs' Property, including the Building and Loading Dock, to be unreasonably restricted.

74.

On a number of occasions during the construction of the Project, the City's employees, agents, and contractors have entered onto plaintiffs' Property without their consent and unreasonably restricted access.

75.

Defendants' conduct, as described above, substantially and unreasonably interfered with plaintiffs' quiet use and enjoyment of the Property and constitutes a private nuisance.

COMPLAINT
Page 25 of 29

76.

Each defendant is joint and severally liable to plaintiffs for the other's actions that caused

a private nuisance because:

a.    Each defendant acted in concert with the other and pursuant to a common design,

namely the construction of the Project;

b.    Each defendant knew the other's conduct constituted a nuisance and provided

substantial assistance and encouragement to other in such conduct; and/or

c.    Each defendant gave substantial assistance to the other in accomplishing the

trespasses and each defendant's conduct, separately considered, constituted a breach of plaintiffs'

property rights.

77.

As a direct result of defendants' actions in causing a private nuisance plaintiffs have

suffered damages in an amount to be determined at trial, but not less than $50,000.

**Fifth Claim for Relief**

**By Kiasantana Against the City Only**

**(Violation of the Pedestrian Mall Law of 1961)**

78.

Plaintiffs re-allege paragraphs 1 through 48.

79.

The City, in coordination with TriMet, created a pedestrian mall, as defined in ORS

376.703(3) in the portion of SE 14th Avenue abutting the Property as part of the Project.

///

COMPLAINT
Page 26 of 29

80.

Despite plaintiffs' demands, the City refused to follow the procedure set forth in the Pedestrian Malls Law of 1961 and violated same by the following omissions:

a.      The City failed to pass a resolution authorizing the creation of a pedestrian mall as provided in ORS 376.725;

b.      The City failed to provide notice to property owners as required by ORS 376.750;

c.      The City failed to provide the statutorily required opportunity or hearing in which property owners could object to the creation of a pedestrian mall; and

d.      The City failed to provide the statutory procedure for the recovery of just compensation for the creation of a pedestrian mall.

81.

Plaintiff Kiasantana seeks judgment awarding declaratory, injunctive, and monetary relief:

a.      A declaration that the Project creates a pedestrian mall as defined by ORS 376.705(3);

b.      A declaration that the City violated the Pedestrian Mall Act as set forth in paragraph 79 above;

c.      A order requiring the City to restore reasonable access to the Property from SE 14th Avenue; and

d.      An award of just compensation to plaintiff Kiasantana in an amount to be determined at trial, but no less than $550,00, for the closure of SE 14th Avenue to vehicular traffic as provided for and Or. Const. Art. I, §18.

COMPLAINT
Page 27 of 29

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as follows:

1.      On the First Claim for Relief against all defendants, a judgment in favor of plaintiffs in an amount equal to the just compensation awarded for the value of plaintiffs' acquisition as described above and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to 42. U.S.C. §1988(b);

2.      On the Second Claim for Relief against all defendants, a judgment in favor of plaintiffs in an amount equal to the just compensation awarded for the value of plaintiffs' acquisition as described above and reasonable attorney fees and costs incurred in the prosecution of this action pursuant to ORS 20.085;

3.      On the Third Claim for Relief against the City, a judgment in favor of Kiasantana in an amount equal to the just compensation awarded for the value of the closure of the portion of SE 14th Avenue abutting the Property as provided in *Ail. et. ux. v. City of Portland*, 136 Or 354 (1931);

4.      On the Fourth Claim for Relief against all defendants, a judgment awarding damages to plaintiffs due to defendants' actions causing a private nuisance;

5.      On the Fifth Claim for Relief, a declaration that the Project creates a pedestrian mall as defined by ORS 376.705(3); a declaration that the City violated the Pedestrian Mall Act; a judgment granting injunctive relief requiring the City to restore reasonable access to the Property from SE 14th Avenue; and an award in favor of Kiasantana in an amount equal to the just compensation awarded for the value of the closure of SE 14th Avenue to vehicular traffic as provided for in *Ail et. ux. v. City of Portland*, 136 Or 354 (1931) and Or. Const. Art. I, §18; and

COMPLAINT
Page 28 of 29

6.    For such other and further relief as this Court deems proper.

DATED this 19th day of August, 2020.


                              FOSTER GARVEY PC


                              By  s/ Paul H. Trinchero
                                  Cynthia M. Fraser, OSB #872243
                                  E-mail: cynthia.fraser@foster.com
                                  Paul H. Trinchero, OSB #014397
                                  E-mail: paul.trinchero@foster.com
                                  Telephone:  (503) 228-3939
                                  Fax:  (503) 226-0259
                                  Attorneys for Plaintiffs


                                                    COMPLAINT
                                                    Page 29 of 29